# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| | Case No. 08-12606 (BLS) |
| **VeraSun** | |
| **Energy Corporation,** *et al.*, | (Jointly Administered) |
| | |
| Reorganized Debtors. | |

| | |
|---|---|
| **VeraSun Energy Corporation,** *et al.*, | Adv. No. 11-53143 |
| | |
| Plaintiffs, | Related to Adv. Docket Nos. 46, 49, & 51 |
| v. | |
| **West Plains Company**, | |
| Defendant. | |

THE ROSNER LAW GROUP LLC
Frederick B. Rosner, Esq.
Scott J. Leonhardt, Esq.
824 North Market Street, Suite 810
Wilmington, DE 19801

-and-

SILVERMANACAMPORA LLP
Lon J. Seidman, Esq.
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753

*Co-Counsel to the Reorganized Debtors*

KLEHR HARRISON HARVEY
BRANZBURG LLP
Domenic E. Pacitti, Esq.
919 North Market Street, Suite 1000
Wilmington, DE 19801

-and-

HUSCH BLACKWELL LLP
Robert V. Ginn, Esq.
Michael S. Degan, Esq.
1620 Dodge Street, Suite 2100
Omaha, NE 68102

*Counsel for Defendant West Plains Company*

## OPINION[1]

Before the Court is a motion by West Plains Company ("West Plains")[2] to dismiss, or alternatively, to transfer (the "Motion") the Complaint.  The Reorganized Debtors initiated this adversary action against West Plains to recover prepetition debts allegedly owed to the Debtors.  The Complaint alleges that the amount owed is a matured debt, and West Plains' failure to pay constitutes a breach of contract.  The Debtors also seek turnover of the amounts owed.

By this Motion, West Plains moves to dismiss the Complaint in its entirety pursuant to Fed R. Bank. P. 7012 and Fed. R. Civ. P. 12(b), or alternatively, to transfer pursuant to 28 U.S.C. §§ 1404(a) and 1412.  West Plains argues that this Court lacks subject matter jurisdiction over this non-core proceeding and does not have personal jurisdiction over the Defendant.  Alternatively, West Plains argues that this proceeding should be transferred to a more convenient forum, specifically the United States District Court for the District of Nebraska.  For the reasons that follow, the Court will grant the Defendant's Motion and dismiss this adversary proceeding for lack of subject matter jurisdiction.

## I. BACKGROUND

VeraSun Marketing, LLC ("Marketing") and U.S. Bio Marion, LLC ("Marion") (together with the other reorganized debtors, the "Reorganized Debtors") and the Plan Administrator of the Reorganized Debtors (the "Plan Administrator" and together with the Reorganized Debtors, the "Plaintiffs") brought this action against West Plains.

Prior to filing for relief under Chapter 11 of the Bankruptcy Code, Marketing and Marion focused primarily on the production and sale of ethanol and ethanol co-products.[3]  For reasons unrelated to this Motion, Marketing and Marion (along with a number of their affiliates) filed petitions for relief under Chapter 11 of the Bankruptcy Code on October 31, 2008.  On October 23, 2009, the Court entered an Order under §§ 1129(a) and (b) of the Bankruptcy Code and Fed. R. Bank. P. 3020 confirming the Joint Plan of Liquidation of VeraSun Energy

---

[1] This Opinion constitutes the Court's findings of fact and conclusions of law, as required by the Federal Rules of Bankruptcy Procedure.  *See* Fed. R. Bankr. P. 7052, 9014(c).

[2] Other defined terms used in this introduction are described *infra*.

[3] Second Am. Compl. ("SAC") ¶¶ 10, 12 [Adv. Docket No. 43].

Corporation and its Affiliated Debtors (the "Plan").[4]    Plaintiffs subsequently commenced this action by filing this complaint (the "Complaint")[5] against West Plains on August 23, 2011 — nearly three years after the petition date and almost two years after confirmation of the Debtors' Plan.[6]

The Plaintiffs are seeking to recover $991,720.21 plus interest and costs from West Plains which the Plaintiffs allege West Plains has failed to remit.[7]  On April 7, 2008, Marketing and West Plains entered into an agreement whereby Marketing would provide West Plains with DDGS[8] for a payment of $1,003,302.26.[9]  On November 11, 2008, West Plains paid $23,554.70 in freight charges owed by the Plaintiffs for transporting the DDGS.[10]  Plaintiffs subsequently credited West Plains' account for the freight charges, resulting in an outstanding balance with the Plaintiffs for $979,747.56.[11]  On April 9, 2009, April 7, 2010, and August 24, 2010, the Plaintiffs sent letters to West Plains demanding payment for the balance owed on the account.[12]  Additionally, Marion and West Plains entered into an agreement whereby Marion was to provide West Plains with DDGS.[13]  Marion delivered the DDGS between October 23, 2008 and October 30, 2008.[14]  As of the date of the Complaint, West Plains has failed to pay the $979,747.56 balance owed to Marketing and the $11,972.65 owed to Marion.[15]

## II. PARTIES' POSITIONS

As a threshold matter, West Plains argues that this matter should be dismissed for lack of subject matter jurisdiction.  West Plains asserts that the Plaintiffs' contract claims are non-core proceedings.   West

---

[4] Docket No. 1955.

[5] The Complaint was subsequently amended twice to add a party, *see* First Am. Compl. [Adv. Docket No. 28], and to add a count, *see* SAC [Adv. Docket No. 43].   All references to the Complaint refer to the second amended complaint.

[6] SAC ¶¶ 3, 21.

[7] *Id.* ¶¶ 1, 31.

[8] DDGS is the abbreviated name for Dried Distillers Grains with Solubles, an ethanol co-product that can also serve as a livestock feed.

[9] SAC ¶ 24.

[10] *Id.* ¶ 25.

[11] *Id.* ¶ 26.

[12] *Id.* ¶ 27.

[13] *Id.* ¶ 28.

[14] *Id.* ¶ 29.

[15] *Id.* ¶¶ 30, 31.

Plains alleges that the Plaintiffs' claims are pre-petition claims based on state law that do not invoke a substantive right under Chapter 11 or address an issue that arises solely in the realm of bankruptcy. West Plains also argues that the Plaintiffs' claims are non-core proceedings that are not otherwise related because this a post-confirmation claim based on pre-petition conduct that was not expressly or specifically provided for in the Plan. Second, West Plains argues that this matter should be dismissed for lack of personal jurisdiction because West Plains does not have the sufficient contacts with the state of Delaware to support the assertion of personal jurisdiction and such an exercise would violate the traditional notions of fair play and substantial justice. Third and finally, West Plains argues that if this matter is not dismissed for lack of jurisdiction, then the matter should be transferred to a more convenient forum. West Plains argues that the District Court of Nebraska would be more convenient because a substantial amount of the dealings between West Plains and the Plaintiffs occurred in the Midwest.

In turn, the Plaintiffs first respond that the Court has subject matter jurisdiction over these proceedings. In particular, the Plaintiffs allege that these are core proceedings because of the two claims for turnover included in the Complaint. Even if these matters were non-core, the Plaintiffs assert that these claims have close connections to the Plan and therefore, are significantly related to the bankruptcy proceedings. Second, the Plaintiffs argue that the Court has personal jurisdiction. The Plaintiffs argue that West Plains has waived any defense of lack of personal jurisdiction. Waiver aside, the Plaintiffs argue that West Plains had sufficient contacts to satisfy personal jurisdiction and cannot show a lack of fair play and substantial justice. Third, the Plaintiffs argue that West Plain's request for transfer of venue should be denied because this Court is the most appropriate forum. The Plaintiffs allege that evidence will be easily accessible in this Court, few witnesses will be necessary, and other courts will not possess the requisite knowledge about the Plan.

### III. JURISDICTION & VENUE

The Court has jurisdiction to determine whether it has subject matter jurisdiction over this matter. 28 U.S.C. §§ 157(a) and 1334(b); *see also Chicot Cnty. Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 376-77 (1940) (holding that a federal court has the authority to determine whether it has subject matter jurisdiction over a proceeding). Additionally, the Court has jurisdiction over motions to transfer venue,

which are considered core proceedings. *DHP Holdings II Corp. v. Home Depot, Inc. (In re DHP Holdings II Corp.)*, 435 B.R. 264, 268 (Bankr. D. Del. 2010).

## IV. LEGAL ANALYSIS

### A. Standard of Review

Under Fed. R. Civ. P. 12(b)(1), a federal court may dismiss a complaint for lack of subject matter jurisdiction. A motion to dismiss under Rule 12(b)(1) challenges the power of the federal court to hear the case. *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 (3d Cir. 2006). When a court determines that it lacks subject matter jurisdiction, the court is barred from taking any further action relating to the case other than to promptly dismiss the matter. *See Jorge Mata v. Eclipse Aerospace, Inc. (In re AE Liquidation, Inc.)*, 435 B.R. 894, 900 (Bankr. D. Del. 2010).

Motions under Rule 12(b)(1) can challenge subject matter jurisdiction through either a facial attack or a factual attack. *See Mortensen v. First Fed. Savs. and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). A "facial attack" challenges the sufficiency of the pleadings. *Id.* When there is a "facial attack," the court accepts as true all well-pleaded factual allegations, viewing them in the light most favorable to the non-moving party. *Id.* In comparison, under a "factual attack," the pleadings facially satisfy jurisdictional prerequisites, but one or more of the allegations is demonstrably untrue, removing the controversy from the court's jurisdiction. *In re AE Liquidation, Inc.*, 435 B.R. at 900. When there is a "factual attack," the court must evaluate the merits of the disputed allegations because the court's power to hear the case is contested. *Id.* In such circumstances, the court is allowed to look beyond the four corners of the complaint and weigh evidence outside of the pleadings to determine if it has jurisdiction. *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 177 (3d Cir. 2000).

When there is a motion under Rule 12(b)(1), the non-moving party bears the burden of demonstrating that the court has jurisdiction. *Id.* at 178. A motion to dismiss for lack of subject matter jurisdiction will be granted only if it is beyond doubt that the plaintiff cannot prove any set of facts which would demonstrate subject matter jurisdiction. *Id.*

In the context of a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the plaintiff has the burden to present sufficient facts that demonstrate jurisdiction is proper. *Machulsky v. Hall*, 210 F.Supp.2d 531, 537 (D.N.J. 2002). In ruling on the motion to dismiss, the court must accept all allegations in the complaint as true

and view disputed facts in a light most favorable to the plaintiff. *Id.* If the plaintiff presents evidence outside of the pleading to resolve factual issues, "the plaintiff must sustain its burden…through sworn affidavits or other competent evidence." *Patterson v. FBI*, 893 F.2d 595, 603-04 (3d Cir. 1990) (citation omitted). Bare pleadings alone are insufficient. *Id.* at 604 (citation omitted). A plaintiff can demonstrate a prima facie case of personal jurisdiction by "establishing with reasonably particularity sufficient contacts between the defendant and the forum state." *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1222 (3d Cir. 1992).

## B. Analysis of Defendant's Motion

Before addressing any other issue, the Court must determine whether it has subject matter jurisdiction over this matter. Absent subject matter jurisdiction, the Court cannot take any further action and the Plaintiffs' Complaint must be dismissed. Since West Plains challenges the jurisdictional prerequisites of the pleadings, the Complaint is being attacked on its face. Therefore, the Court accepts as true all well-pleaded factual allegations and view them in a light most favorable to the non-moving party, the Plaintiffs.

The subject matter jurisdiction of bankruptcy courts is governed by 28 U.S.C. §§ 1334 and 157. Under § 1334, district courts have jurisdiction over bankruptcy proceedings. However, under § 157, district courts may refer bankruptcy matters within their jurisdiction to the bankruptcy courts. Bankruptcy courts are routinely referred most bankruptcy cases. *ConocoPhillips Co. v. SemGroup, L.P. (In re SemCrude, L.P.)*, 428 B.R. 82, 93 (Bankr. D. Del. 2010) (citing *Halper v. Halper*, 164 F.3d 830, 836 (3d Cir. 1999)); *see also* Am. Standing Order of Reference, Feb. 29, 2012.

Under § 157, there are two types of bankruptcy matters: core and non-core. *Id.* In a core proceeding, bankruptcy courts have the power to "'hear, decide and enter final orders and judgments.'" *Halper*, 164 F.3d at 836. In a non-core proceeding, a bankruptcy judge may have the power to hear proceedings, but it lacks the authority (absent consent of the parties) to enter a final judgment and must therefore provide the district court with a report and recommendation under Fed R. Bank. P. 9033. *See also* 28 U.S.C. § 157(c)(1).

### 1. Core Proceedings Analysis

First, the Court must determine whether this matter is a "core proceeding." There are two steps a court must take to determine whether a proceeding is core. *Halper*, 164 F.3d at 836. First, the Court must consult the enumerated list of "core" proceedings in § 157(b). *Id.*

Second, the Court must determine whether the proceeding "invokes a substantive right provided by title 11" or whether "by its nature, could only arise in the context of a bankruptcy case." *Id.* (citation omitted). Each cause of action must be analyzed separately to determine if it is core or non-core. *In re DHP Holdings II Corp.*, 435 B.R. at 270.

The Plaintiffs argue that this matter is a core proceeding because they allege two claims for turnover in the Complaint.[16]   A turnover claim under § 542(b) of the Bankruptcy Code is considered a core proceeding.  28 U.S.C. § 157(b)(2)(E).  However, merely labeling a claim as a turnover action is not sufficient to demonstrate the Court's jurisdiction over this proceeding.  Rather, the Court must determine whether the Plaintiffs have properly invoked 11 U.S.C. § 542(b).  *In re DHP Holdings II Corp.*, 435 B.R. at 270.  An action falls within the scope of § 542(b) when the debt is "matured, payable in demand, or payable on order."  Therefore, turnover is not a proper cause of action when there is a bona fide dispute of the claim.  *In re Jamuna Real Estate LLC*, 357 B.R. 324, 333 (Bankr. E.D. Pa. 2006); *see also In re Johnson*, 215 B.R. 381, 386 (Bankr. N.D. Ill. 1997) ("Turnover is not intended as a remedy to determine disputed rights of parties to property.  Rather, it is intended as the remedy to obtain what is acknowledged to be property of the bankruptcy estate.") (citation omitted).

West Plains argues that the Plaintiffs' turnover claim is not a proper § 542(b) claim because West Plains disputes the amount due and has raised rights to setoff and recoupment.  The Plaintiffs respond that the fact that an accounts receivable action is subject to litigation does not amount to a bona fide dispute.  The Plaintiffs state that a bona fide dispute exists "when there is 'a genuine issue of material fact that bears upon the debtor's liability, or a meritorious contention as to the application of law to the undisputed facts.'"  *In re Jamuna Real Estate LLC*, 357 B.R. at 334 (quoting *B.D.W. Assocs. v. Busy Beaver Bldg. Ctrs. Inc.*, 865 F.2d 65, 66 (3d Cir. 1989)).

The Court finds that West Plains has articulated a "bona fide dispute" as to the amount claimed by the Plaintiffs and therefore, this is not a proper turnover action.  The turnover dispute in *In re DHP Holdings II Corp.* is instructive.  435 B.R. at 270.  In that case, the debtors filed a post-petition complaint attempting to recover an accounts receivable from Home Depot that was created pre-petition.  *Id.* at 268.  In the complaint, the debtors asserted a § 542(b) turnover claim.  *Id.*  In its answer, Home Depot generally denied that it was obligated to pay

---

[16] Pls.' Mem. in Opp'n 10 [Adv. Docket No. 49].

the asserted amount and also asserted setoff and recoupment rights. *Id.* When Home Depot filed a motion to transfer venue, the court found that the debtors' turnover action was non-core. *Id.* at 271. While the debtors argued that Home Depot's dispute was only a general denial of liability, Home Depot's denial of liability and assertion of setoff and recoupment rights was enough to render the debt disputed. *Id.*

In its answer to the Complaint, West Plains does more than just dispute the amount due. West Plains denies that the parties entered into an agreement and denies that West Plains had an outstanding balance owed to the Plaintiffs.[17] As in *In re DHP Holdings II Corp.*, West Plains' denial of liability is sufficient to render the debt disputed. Since the debt is disputed, the turnover claim is non-core and does not qualify under § 157(b).

The Plaintiffs' two remaining claims are also non-core. The other two actions that the Plaintiffs bring against West Plains are standard breach of contract claims under state law. These actions do not invoke a substantive right provided by title 11, nor are they claims which could only arise in the context of bankruptcy. "Absent bankruptcy, the claims raised in the adversary proceeding would be typical garden-variety state law litigations." *Berks Behavioral Health, LLC v. St. Joseph Reg'l Health Network (In re Berks Behavioral Health, LLC)*, 464 B.R. 684, 689 (Bankr. E.D. Pa. 2012). These are state law contract claims which attempt to collect a disputed pre-petition accounts receivable after confirmation of the Plan. The Debtors' claims are not specific to bankruptcy and therefore cannot be characterized as "core." *Id.*

## 2. Non-Core "Related To" Proceedings Analysis

Because this matter is a "non-core" proceeding, the Court can only hear this matter if it is "otherwise related to" a case under Chapter 11. 28 U.S.C. § 157(c)(1). In *Pacor, Inc. v. Higgins*, the Third Circuit established that bankruptcy courts have jurisdiction to hear a proceeding if the "outcome of [the] proceeding could conceivably have any effect on the estate being administered in bankruptcy." 743 F.2d 984, 994 (3d Cir. 1984); *but see Nuveen Mun. Trust ex rel. Nuveen High Yield Mun. Bond Fund v. WithumSmith Brown, P.C.*, 692 F.3d 283, 294 (3d Cir. 2012) (observing that the "related to" jurisdiction is not limitless and that bankruptcy courts have no jurisdiction over proceedings that have no effect on the estate of the debtor).

---

[17] *See* Ans. ¶¶ 23-27 [Adv. Docket No. 30].

While the *Pacor* test is well established, the inquiry changes when the action is brought post-confirmation. *See Nuveen Mun. Trust*, 692 F.3d at 294. In order for a bankruptcy court to continue to exercise jurisdiction during the post-confirmation stage, "the claim must affect an integral aspect of the bankruptcy process—there must be a close nexus to the bankruptcy plan or proceeding." *In re Resorts Int'l, Inc.*, 372 F.3d 154, 167 (3d Cir. 2004). "Matters that affect the interpretation, implementation, consummation, execution, or administration of the confirmed plan will typically have the requisite close nexus." *Id.*

There is nothing in this matter that will affect the interpretation, implementation, or consummation of the confirmed Plan sufficient to demonstrate a close nexus. First, the Plan does not specifically describe this type of action as one which the Court has "related to" jurisdiction, and does not reserve jurisdiction over such a claim. *See Astropower Liquidating Trust v. Xantrex Tech., Inc. (In re Astropower Liquidating Trust)*, 335 B.R. 309, 325 (Bankr. D. Del. 2005) (concluding that where the plan specifically describes an action over which the court has "related to" jurisdiction pre-confirmation and expressly provides for retention of such jurisdiction to liquidate the claim, there is a sufficiently close nexus to support jurisdiction).

The Plaintiffs argue that the Plan specifically provided the Court with jurisdiction over this action in Article XIII of the Plan. However, the Plan and Confirmation Order do not provide for retention of jurisdiction in regards to this specific type of action. Article XIII of the Plan reads in relevant part:

> **RETENTION OF JURISDICTION**
> **13.1 *Retention of Jurisdiction.*** Pursuant to sections 105(c) and 1142 of the Bankruptcy Code and notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases and the Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:
>
> (e) Approve such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases and other agreements or documents created in connection with the Plan, the Disclosure Statement or the Confirmation Order;

(f) Resolve any cases, controversies, suits or disputes that may arise in connection with the consummation interpretation or enforcement of the Plan or any contract, instrument, release or other agreement or document that is executed or created pursuant to the Plan, or any entity's rights arising from or obligations incurred in connection with the Plan or such documents;

(i) Hear and determine the causes of action by or on behalf of the Debtors or the Reorganized Debtors, including causes of action relating to the Litigation Claims, including avoidance actions under sections 544, 545, 547, 549 and 553 of the Bankruptcy Code and turnover actions under sections 542 and 543 of the Bankruptcy Code;

(n) Enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Chapter 11 Case....[18]

Nowhere in Article XIII or anywhere else in the Plan is this type of state-law contract action based on pre-petition conduct explicitly included. Rather, Article XIII includes broad and general language that does not suffice to establish a close nexus. *Compare In re AstroPower Liquidating Trust*, 335 B.R. at 324-25 (finding that a plan specifically describe an action over which the Court had "related to" jurisdiction when the definition of "Litigation Claims" included "causes of action arising out of or in connection with the Debtor's sale of stock in Xantrex Technology, Inc."), *with BWI Liquidating Corp. v. City of Rialto (In re BWI Liquidating Corp.)*, 437 B.R. 160, 166 (Bankr. D. Del. 2010) (finding that a plan's broad language failed to establish a "close nexus" because a plan must specifically describe a cause of action in order to retain "related to" jurisdiction).

The other two facts that the Plaintiffs argue demonstrate a "close nexus" are also unpersuasive in light of the Plan's language. First, the fact that any recovery from West Plains may result in a greater dividend for creditors under the confirmed Plan is not persuasive when weighed against the post-confirmation nature of the Plan and the tenuous connection to the Plan. *See In re Resorts Int'l, Inc.*, 372 F.3d at 170 (holding that "the potential to increase assets of the Litigation Trust and its beneficiaries does not necessarily create a close nexus sufficient

---

[18] Pls.' Mem. in Opp'n 17 [Adv. Docket No. 49]; Plan § 13.1 [Docket No. 1955].

to confer 'related to' bankruptcy court jurisdiction post-confirmation");
*In re BWI Liquidating Corp.*, 437 B.R. at 166 ("The [c]ourt must weigh the
potential to increase recovery for creditors with other contributing
factors, including whether the suit is post-confirmation and its
relatedness to the Plan"). As a practical matter, the Court observes that
if the prospect of an increased recovery were sufficient to establish the
requisite nexus, then bankruptcy courts would enjoy post-confirmation
jurisdiction over almost any conceivable claim or cause of action a post-
confirmation debtor could file. That result is clearly not contemplated
or intended by the ruling in *Resorts*.

Second, the fact that the Plaintiffs in this matter are the
Reorganized Debtors rather than a liquidating trust or non-debtor is
irrelevant. *See Shandler v. DLJ Merch. Banking, Inc. (In re Insilco Techs.,
Inc.)*, 330 B.R. 512, 525 (Bankr. D. Del. 2005) (noting that the
jurisdictional statutes apply without differentiating between
liquidating and reorganizing debtors and that *Resorts* makes no such
distinction in the "close nexus" test). Therefore, these two facts are
unpersuasive and do not demonstrate the "close nexus" necessary for
non-core "related to" subject matter jurisdiction.

Since the Plaintiffs' claims are neither core nor "related to" these
bankruptcy proceedings, the Court lacks the necessary subject matter
jurisdiction to determine, on the merits, the Plaintiffs' claims for relief.
Since the Court lacks subject matter jurisdiction, the Court is barred
from taking any further action relating to the case. Therefore, the Court
will not consider West Plains' arguments relating to personal
jurisdiction or transfer of venue.

## V. CONCLUSION

For the foregoing reasons, the Court finds that the movant has
met its burden with respect to its Motion, and will dismiss the
adversary proceeding in its entirety. Therefore, the Motion is
**GRANTED.**

**BY THE COURT:**

Dated: June 28, 2013
Wilmington, Delaware

Brendan Linehan Shannon
United States Bankruptcy Judge